## UNION INSURANCE COMPANY *v.* UNITED STATES.

1. The act of August 6th, 1861, "to confiscate property used for insurrectionary purposes"—(which act declares that such property shall be the lawful subject of *prize and capture*, and that such prizes and captures shall be condemned in the *District* or *Circuit Court* . . . having jurisdiction, *or* in *admiralty*, in any district in which they may be seized, or into which they may be taken, and that the attorney-general "may institute the proceedings of condemnation"),—extended to all descriptions of property, real or personal, on land or on water.

2. The Circuit Court has jurisdiction, under that act, of proceedings for the condemnation of real estate or property on land; and such proceedings may be shaped in *general* conformity to the practice in admiralty; that is to say, they may be in the form and modes analogous to those used in admiralty. But issues of fact, on the demand of either party, must be tried by jury; such cases differing from cases of seizure made on navigable waters where the course of admiralty may be *strictly* observed.

3. Such proceedings, having forms and modes but analogous to those used in admiralty, and issues of fact being to be tried by a jury, do not necessarily constitute "a cause in admiralty."

4. Where a proceeding, under the act, to enforce the forfeiture of real estate, was carried on in a Circuit Court by libel, monition, claim interposed, and testimony taken in conformity with the practice of courts of admiralty, and without a jury anywhere, jurisdiction of the decree was taken by this court on *appeal*, but only for the purpose of reversing the decree as irregular, and directing a new trial.

5. The proceedings in cases of the seizure of real estate should, in respect to trial by jury and exceptions to evidence, be conformed to the course of proceedings by information on the common-law side of the court, in cases of seizure on land.

6. An owner of real property in New Orleans, who leased it during the late rebellion to a firm publicly engaged in the manufacture of arms for the rebel confederacy—the lease stating, in terms, that the lessees intended to establish "engines, machinery," &c., in the property leased—was presumed to have made the lease knowing the purpose for which the property was to be used, and consenting to it. And his interest in the property was held to be rightly confiscated under the act of 6th August, 1861.

7.. But the presumption was held to be otherwise in regard to a party taking a mortgage from the owner before the lessees took possession, and where there was no proof of consent by the mortgagee to the use made of the premises, beyond the fact of his having taken a mortgage. And the interest of such mortgagee was held not confiscable under the act.

8. The forfeiture was incurred when the lessees went into actual use of the premises under lease, and the subsequent seizure for condemnation divested all intermediate liens.

THIS was an *appeal* from the Circuit Court of the United States for the Eastern District of Louisiana; the case being thus:

An act of Congress, of August 6th, 1861, passed during the late rebellion, and entitled "An act to confiscate property used for insurrectionary purposes," provides, in different sections, as follows:

The first section provides that property used in aid of the rebellion, with consent of the owner, shall be the "lawful subject of *prize and capture* wherever found," and makes it the duty of the President to cause it "to be seized, confiscated, and condemned."

The second section provides that such "prizes and captures shall be condemned in the District or Circuit Court of the United States having jurisdiction of the amount, OR in admiralty, in any district in which the same may be seized, or into which the same may be taken and proceedings commenced."

The third section provides that "the attorney-general, or any district attorney of the United States, in which said property may at the time be, may institute the proceedings of condemnation, and in such cases they shall be wholly for the benefit of the United States; or any person may file an information with such attorney, in which case the proceedings shall be for the use of such informer and the United States in equal parts."

With this statute in force, a square of ground in New Orleans, with the buildings upon it, was leased, on the 17th of September, 1861, by one Leonce Burthe to a firm, Cook & Brother, who, in October or November, established on the premises *a manufactory of arms for the rebel government*, and

continued the business until the occupation of the city by the national forces in the spring of 1862.

On the 8th of October, 1861, the Union Insurance Company of New Orleans took a mortgage from Burthe upon three undivided twenty-fifths of the property to secure the payment of a note for $3500, due from him to the company.

Subsequently, suit was instituted upon the mortgage, and in due course a decree of sale was rendered, under which the insurance company became purchasers of the mortgaged premises for $1400, and on the 26th of February, 1864, received the sheriff''s deed of the property.

In April, 1864, the company obtained a judgment for $2735, being the balance due on the note of Burthe, and was about to sell the residue of the property, when further proceeding was arrested by a military order.

It appeared further from the evidence that three minors of the Burthe family were legal owners of four thirty-sixths of the property on which the gun factory was established.

The Cooks, to whom Burthe made the lease, were well-known manufacturers of arms on a large scale for the rebel government, and the lease stated the fact that they intended to establish in the property leased " engines, machinery," &c.

At the time, however, when the insurance company took its mortgage, the Cooks had not taken possession of the property, nor was it proved otherwise than as the mere taking of the mortgage proved it, that the company had consented to the use which the Cooks meant to make of the premises.

On the 4th of April, 1865, the District Attorney for the Eastern District of Louisiana, filed in the Circuit Court of the United States for that district, a libel of information against the property thus leased. The libel described the case as one of seizure and forfeiture, and after reciting the already mentioned act of Congress of August 6th, 1861, which declared the property of all persons who should knowingly use or employ it, or consent to the use and employment of it in aid of the rebellion, to be lawful subject of prize and capture, proceeded to allege that the property leased had been

so used and employed, and asked à decree for its condemnation and forfeiture to the use of the United States and the informant.

Upon the filing of this libel, notice was given, monition was published, claims were interposed, and testimony was taken in general conformity with the practice of courts of admiralty.

The Circuit Court condemned the whole property as forfeited to the United States, except the four thirty-sixths, called in the decree four twenty-fifths, of the minors.

An appeal was taken by the Union Insurance Company, and another claimant, who abandoned the prosecution of his appeal. No appeal was taken by the United States from that part of the decree which exempted the interests of the minors from condemnation.

Three points were made in this court on the appeal:

1. That the Circuit Court had no jurisdiction under the act of 1861; that the proceedings were in admiralty form throughout,—a form dispensing with jury; that the Constitution securing to the citizen trial by jury, Congress had no power to convert into a " case in admiralty," and so to bring into admiralty jurisdiction, cases which were not admiralty cases, and were not liable to be brought within that jurisdiction when the Constitution was made, and that such a purpose was not to be presumed; that it was impossible to regard the proceeding in this case—one against real estate in the midst of a great city, and under a statute of municipal forfeiture—as an "admiralty case," in any true definition of those terms.

2. That the proceeding should have been by the course of the common law, and with a jury, when the decree of the court below would have come up by writ of error, which form of bringing the matter here, and not appeal, was the proper form.

3. That on the merits the decree was wrong.

· *Mr. Durant, for the appellants ; Mr. Stanbery, A. G., and Mr. Ashton, special counsel of the United States, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

The first questions in this cause relate to jurisdiction.

It was urged in argument, that the act of Congress does not authorize the proceedings instituted in the Circuit Court.

The answer to this proposition must be determined by the construction of the act.

It is sufficiently obvious that the general object of the enactment was to promote the suppression of rebellion by subjecting property employed in aid of it with the owner's consent, to confiscation. It extended to all descriptions of property, real or personal, on land or on water. All alike were made subjects of prize and capture, and, under the direction of the President, of seizure, confiscation, and condemnation.

The act must be construed with reference to this general purpose. In ordinary use the words "prizes and capture" refer, doubtless, to captures on water as maritime prize; but in the section under consideration here they plainly refer to property taken on land as well as on water, and the duties prescribed to the President include the taking of this property by civil process as well as by naval or military force, and sanction proceedings for confiscation and condemnation in civil courts without regard to the mode of seizure.

The second and third sections of the statute prescribe the action to be taken in the courts. This action is described, generally, in the third section, as "proceedings for condemnation," to be instituted by the attorney-general, or any district attorney. And jurisdiction of these "proceedings" is given to the District or Circuit Court having jurisdiction of the amount, or in admiralty, in any district where the property is seized or into which it may be taken.

This language is certainly not clear. But we think that the construction which, as we understand, has been generally adopted in the District and Circuit Courts in cases of proceedings for the condemnation of real estate or property on land, is substantially correct. That construction treats the grant of jurisdiction in admiralty as a grant of jurisdiction of the "proceedings of condemnation" to the Circuit or Dis-

trict Court according to the amount in suit; with power to both courts to shape those "proceedings" in general conformity to the practice in admiralty.

Such proceedings do not necessarily constitute a cause in admiralty. When instituted for condemnation of property on land, they have relation exclusively to matters which, in their nature, are not of admiralty cognizance. But Congress may, doubtless, give jurisdiction of such proceedings to the Circuit as well as to the District Courts, and may authorize the exercise of this statutory jurisdiction in the form and modes analogous to those used in admiralty. And this, we think, was the purpose of the act.

The difficulty of construction arises from the terms in which jurisdiction is granted "to any District or Circuit Court having jurisdiction of the amount, *or* in admiralty, in any district where the property is found." It is said that the use of the disjunctive "*or*" restricts the jurisdiction in admiralty to the District Courts. And this view is certainly not without some warrant in the phraseology of the act. But when we look beyond the mere words to the obvious intent we cannot help seeing that the word "or" must be taken conjunctively; and that the sense of the law is that both the Circuit and the District Courts shall have jurisdiction "according to the amount" *and* "in admiralty."

This construction impairs no rights of parties. In cases of seizures on land the right of trial by jury is not infringed. In such cases the proceeding must be in general conformity to the course in admiralty; but issues of fact, on the demand of either party, must be tried by jury.* Where the seizure is made on navigable waters, the course of admiralty may be strictly observed.

That this construction carries into effect the true intention of Congress sufficiently appears on reference to the act of July 17th, 1862,† in which it is provided expressly that proceedings for confiscation shall conform as nearly as may be to proceedings in admiralty or revenue cases.

---

* The Sarah, 8 Wheaton, 394.     † 12 Stat. at Large, 591, § 7.

We think, therefore, that the Circuit Court had jurisdiction of the cause.

It remains to be considered whether the decree of the court can be reviewed here on appeal. No appeal is expressly provided by the act of 1861. The Constitution, however, gives to this court appellate jurisdiction in all cases of which the inferior courts of the United States have original jurisdiction, subject to such exceptions and regulations as Congress shall make; and the act of 1803* provides, generally, for appeals from decisions in admiralty. Some of the judges think it a reasonable construction of the act that it was not intended to except decrees under it from the appellate jurisdiction of this court; but that it was intended to apply to them the general regulations of admiralty proceedings in respect to appellate as well as to original jurisdiction; while a majority of the court is of opinion that appellate jurisdiction may be taken of the cause, because the proceedings below, though in a case of common law jurisdiction, were substantially according to the course in admiralty; but only for the purpose of reversing the decree of the Circuit Court as irregular, and directing a new trial.†

We proceed then to the questions arising upon the merits.

There is no reasonable doubt that the Cooks established their manufactory of arms on the ground leased by him to them with the full knowledge and consent of Leonce Burthe. It thus became within the express terms of the act the lawful subject of prize and capture from the time of that establishment.

The evidence in respect to the rights of the insurance company is not so clear. To the extent of the interest created by the mortgage the company may, doubtless, be properly regarded as owner. But there is no direct proof of consent to the unlawful use; and, indeed, no proof at all, except the fact of taking the mortgage, and it does not appear that the Cooks had taken possession under their lease

---

* 2 Stat. at Large, 244.     † The Sarah, 8 Wheaton, 391.

before the execution of the mortgage. We do not think this evidence of consent sufficient to support a forfeiture.

The counsel for the company very properly abandoned any claim under the judgment recovered for the balance due on the mortgage note. The forfeiture was incurred when the Cooks went into actual use of the premises under the lease, and the subsequent seizure for condemnation divested all intermediate liens.

The decree of the Circuit Court must be REVERSED as irregular, and the cause remanded for new trial in conformity with this opinion. The property seized having been real estate, the proceedings on the new trial must be conformed in respect to trial by jury and exceptions to evidence to the course of proceeding by information on the common law side of the court in cases of seizure upon land.*

---

* The Vengeance, 3 Dallas, 297; The Sarah, 8 Wheaton, 391.