Richard Elmer **WOODRING**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

Harold Raymond **LOCH**, Jr., Appellant,

v.

**UNITED STATES of America,**
Appellee.

George Louis **BRADLEY**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

Nos. 9186–9188.

United States Court of Appeals
Tenth Circuit.

April 13, 1967.

Rehearings Denied in Nos. 9186, 9187,
May 18, 1967.

John M. Amick, C. Temple Bixler, and Charles I. Allen, Oklahoma City, Okl., for appellants.

Robert L. Berry, Asst. U. S. Atty., Oklahoma City, Okl. (B. Andrew Potter, U. S. Atty., Oklahoma City, Okl., on brief), for appellee.

Before BREITENSTEIN, SETH and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

Appellants were found guilty by a jury on a one count indictment charging them with a violation of Section 371, Title 18 USCA in conspiring with others to transport with unlawful intent forged money orders and checks, knowing them to be forged in violation of Section 2314, Title 18 USCA.

The transcript of the trial discloses that the following evidence was before the jury. Woodring, while incarcerated in an Oklahoma county jail, during October, 1965, met Johnny Joe Corbin.[1] Woodring discussed with Corbin a scheme by which they could obtain money by writing and cashing checks. After they were released from the county jail, they met in Oklahoma City, and went to the home of Miss Diana Moore,[2] and solicited her aid in their check cashing scheme. These three then visited appellant Harold Raymond Loch to whom they disclosed their scheme. Loch gave them money with which Woodring established checking accounts in two local banks under a fictitious name. Checks were drawn on these accounts and cashier's checks were issued by the depository banks. Woodring knew that George Louis Bradley, a California resident, could obtain money orders and duplicate cashier checks. Bradley was contacted by telephone and forwarded through the mail to Corbin's home address four money orders and a cashier's check. The money orders and cashier's check were blank except as to the amount.

When these instruments were received by Corbin, he delivered them to Woodring who distributed the cashier's check and one money order to appellant Loch. Loch induced a couple named Boucher[3] to assist him in passing the money order and cashier's check. The check was cashed, but the Bouchers were unable to pass the money order.

1. Co-conspirator not charged.

2. Co-conspirator not charged.

3. Co-conspirators not charged.

Woodring, with Corbin and Moore, proceeded to pass the other money orders in Oklahoma City and surrounding communities.[4]

Moore, using Loch's typewriter and one subsequently acquired by her and Corbin, typed the date, name of payee and any other information required on the blank instruments. Woodring forged a name to the instruments and Corbin cashed them. The cash received by him was delivered to Woodring who acted as the group's financier.

During the time Woodring, Moore and Corbin were passing the fraudulent instruments, several telephone orders for more money orders were placed to Bradley in California. On one occasion $100.00 was transmitted by Western Union Telegram to Bradley in California.

When Bradley failed to send additional instruments to Woodring, it was decided that Moore, Corbin and Woodring would go to California in the automobile provided by Loch in order to ascertain why additional money orders were not being sent.

When they arrived in California, they met Bradley, discussed the scheme with him and separated. Moore and Corbin returned to Oklahoma City.

Woodring, Loch and Bradley were jointly tried and convicted. On this appeal, they allege insufficiency of their indictment, errors in admission of evidence during trial, and a failure of the court to grant a mistrial when it learned that one of the jurors had engaged in conversation with a third party during trial.

■ An examination of the indictment discloses that the charges against appellants were couched in the language of the statutes purportedly violated. [18 U.S.C. §§ 371 and 2314]. It is contended that the use of the word "or" in the language of the statutes is a disjunctive use and subjects appellants to trial under an indictment which does not fully inform them of the charges they must defend, nor protect them from double jeopardy. This contention is without merit, because the Supreme Court of the United States has said, "But when we look beyond the mere words to the obvious intent we cannot help seeing that the word 'or' must be taken conjunctively. * * *" Union Insurance Co. v. United States, 73 U.S. 759, 764, 6 Wall. 759, 18 L.Ed. 879. The Fifth Circuit in a recent case wherein the language of the statutes here in question were used said of the indictment, "It was in the exact language of the statutes, §§ 371 and 2314, Title 18, United States Code. * * * They [the charges] were correctly and adequately stated." Grene v. United States, 360 F.2d 585, 586 (1966).

Appellants also contend that the indictment is insufficient because no technical language preceded the listing of certain overt acts. The indictment alleges the violation of §§ 371 and 2314 followed by the words "overt acts" set out in capital letters and underlined in the middle of the page. Below the words "overt acts" the series of events corresponding to the facts previously noted in this opinion[5] are listed.

It is true the indictment does not contain the usual language "At the times, hereinafter mentioned, the defendants committed the following overt acts in furtherance of said conspiracy and to effect the objects thereof," however, the incidents are adequately identified by the words "overt acts".

■ An overt act " * * * is some act [done] to effect the object of the conspiracy." "The gist [of conspiracy] is the agreement * * * to effect the unlawful end; but, before the offense is a completed one, some one or more of the parties to the conspiracy must do some ['overt act']." Dahly v. United States, 50 F.2d 37, 42 (8 Cir. 1931).

■ The failure to use the traditional language does not render the indictment

---

4. The transportation to the surrounding communities was made possible when Loch, an employee of a used car lot, loaned the conspirators an automobile.

5. Page 1, paragraph 2, et seq.

insufficient. The document sufficiently informs the defendants of what they must meet in preparation of their defense and with the entire record is sufficiently specific to obviate the danger of the defendants being prosecuted a second time for the same offense.

 This court has said, "The test of the sufficiency of an indictment is not determined by whether the indictment alone will protect the accused against the possibility of double jeopardy. The judgment of conviction or acquittal is the bar to further prosecution [Citations omitted], and the entire record of all proceedings against the accused may be referred to if there is a claim that a subsequent prosecution constitutes double jeopardy * * *. The entire transcript of the trial is also available should its need ever arise." Flores v. United States, 338 F.2d 966, 967 (1964).

Appellants complain that certain money order exhibits should not have been admitted as evidence. The exhibits complained of were admitted after they had been identified as bearing fictitious signatures by a witness who established himself as the Vice President and Office Manager in charge of all the records of the California company who distributed the money orders through its authorized California agents.

The exhibits themselves contained the notations "stolen" and "fictitious signature". These notations were identified by the witness as his handwriting, placed thereon after he had examined the books and records of the California corporation supervised by him.

Section 1732, Title 28, U.S.C.A. " * * makes admissible in all judicial proceedings, civil or criminal, records made in and pertaining to the regular course of business." Wheeler v. United States, 93 U.S.App.D.C. 159, 211 F.2d 19, 23 (1953).

 "All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect

its admissibility." Landay v. United States, 108 F.2d 698, 705 (6 Cir. 1939).

 The exhibits were properly admitted based upon the admissible testimony of the witness identifying them.

 . Further error is alleged because the Regional Manager of Western Union Telegraph Company was allowed to testify. His testimony identified and explained the records of his company, subpoenaed in order to show, in corroboration of other witnesses, that appellant Woodring had wired money to appellant Bradley. The basis for appellants' objection is that testimony as to confidential messages is prohibited by the Communications Act, 47 U.S.C. § 605. The transcript of the evidence indicates that the co-conspirators, Corbin and Moore, had informed the prosecution of the communication prior to trial. The transcript further discloses that a subpoena duces tecum was issued relying upon the information obtained from the co-conspirators, directing an agent of the Western Union Telegraph Company to bring his records to the court. This subpoena was regularly served on an agent of the corporation and the Regional Manager, whose testimony is questioned, complied with its order. The rule laid down regarding admissibility of the contents of telegrams in United States v. Pardo-Boland, 348 F.2d 316, 320 (2 Cir. 1965), is satisfied by the record.

The final error alleged complains that a mistrial should have been granted when the court was advised that one of the jurors had communicated with a third party during the course of the trial.

This disclosure came after the jury had brought in its verdict and was awaiting discharge. The third person with whom the alleged communication occurred was the father of one of the appellants. The juror, who had been elected foreman, was questioned in open court by the trial judge and stated that the discussion had been induced by the father of the appellant, that it did not relate to the evidence being received, and did not prejudice him for or against the appellants.

The trial court, in its sound discretion, accepted the juror's statement regarding the incident and concluded that the conversation was of no material consequence, and did not deny the appellants a fair trial.

It should be pointed out that the orderly disposition of a criminal case might be seriously disrupted if defense counsel is permitted to wait until after a conviction to raise questions of possible prejudice arising from facts such as these. It has been properly said that: "A disqualification which by reasonable diligence could have been discovered before verdict, may not afterwards be made the subject of an attack upon a verdict." Brown v. United States, 356 F.2d 230, 233 (10 Cir. 1966).

The discretion granted a trial judge in reviewing a juror's misconduct has been firmly established by this court in Welch v. United States, 371 F.2d 287 (10 Cir. 1966).

We conclude that the court in this instance did not abuse its discretion in refusing a new trial.

Affirmed.