971 F.2d 896
 61 USLW 2117
 UNITED STATES of America, Plaintiff-Appellee,
v.
ALL ASSETS OF STATEWIDE AUTO PARTS, INC. and Proceeds
Traceable Thereto; Real Property and Premises Known as 1256
Grand Street, Brooklyn, New York; All Assets of Citywide
Auto Parts, Inc. and Proceeds Traceable Thereto; Real
Property and Premises Known as 651 Fountain Avenue,
Brooklyn, New York; All Assets of Empire State Auto
Wreckers, Inc. and Proceeds Traceable Thereto; Real
Property and Premises Known as 1489 Montauk Highway,
Bellport, New York; All Assets of Best Auto School, Inc.
and Proceeds Traceable Thereto; Real Property and Premises
Known as 492 East 98th Street, Brooklyn, New York; Real
Property and Premises Known as 29 Puritan Lane, Farmingdale,
New York; Real Property and Premises Known as 8 Townsend
Lane, Hicksville, New York; and Real Property and Premises
Known as 19 Annandale Drive, Commack, New York, Defendants,
James D. Muro; Richard Lieberman, President of Best Auto
School, Inc.; Salvatore Cioffi, President of Empire State
Auto Wreckers, Inc.; Anthony Francaviglia; Josephine
Francaviglia; Frank Frigenti, Jr.; Ronald A. Caputo; Mary
Ann Caputo; Frank Morsello; Margaret Morsello; John
Carneglia; Jenny Carneglia; Charles Carneglia; Harvey
Melvin Crosby and Anthony Grau, Claimants,
James D. Muro, Claimant-Appellant.
 No. 1383, Docket 92-6015.
 United States Court of Appeals,
Second Circuit.
 Argued April 15, 1992.
Decided Aug. 3, 1992.
 
 Perry S. Reich, Lindenhurst, N.Y. (Schapiro & Reich, Mahler & Harris, P.C., Kew Gardens, N.Y., of counsel), for claimant-appellant.
 Richard K. Hayes, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Deborah B. Zwany, James M. Catterson, Paul Weinstein, Asst. U.S. Attys., of counsel), for plaintiff-appellee.
 Before: TIMBERS, VAN GRAAFEILAND and PRATT, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 James D. Muro (Muro), the president of Statewide Auto Parts, Inc. (Statewide), appeals from a December 16, 1991, order of the United States District Court for the Eastern District of New York, Eugene H. Nickerson, Judge, which denied his motions (1) to dismiss the government's verified forfeiture complaint in rem, and (2) to vacate the government's seizure of his company's assets. For the following reasons, we affirm the order of the district court.
 
 FACTS AND BACKGROUND
 
 2
 On November 15, 1991, the United States filed a verified in rem complaint seeking the forfeiture of various real and personal properties which, the government alleged, had been used to operate an extensive stolen car enterprise. This civil forfeiture action was commenced under 18 U.S.C. § 981(a)(1)(A), which provides, in pertinent part:
 
 
 3
 [T]he following property is subject to forfeiture to the United States:
 
 
 4
 (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 5313(a) or 5324 of title 31, or of section 1956 or 1957 of this title, or any property traceable to such property.
 
 
 5
 The government alleged that the in rem defendants--"all assets" of four named corporations, including Statewide, plus seven identified parcels of real property--had been used to commit, and facilitate the commission of, violations of various subsections of 18 U.S.C. § 1956, the federal money-laundering statute, violations which emanated from trafficking in stolen automobiles bearing illegally-altered vehicle identification numbers, and from related mail fraud and bribery offenses.
 
 
 6
 Simultaneously with filing the complaint, the government applied for a warrant to seize the in rem defendants. This application, which was submitted to Judge Nickerson ex parte, was accompanied by a 93-page, 337-paragraph declaration from Nassau County police detective Thomas Keteltas, who purported to detail the claimants' scheme of "laundering" stolen automobiles by passing off late-model automobiles as "rebuilt salvage". Detective Keteltas swore to the truth of his declaration before Judge Nickerson, and Judge Nickerson signed the seizure warrant.
 
 
 7
 Within the next four days (the record is unclear as to the specific dates), United States marshals seized the Statewide premises, hung "Out of Business" signs outside the building, interrupted telephone service, and sealed the premises. A UPS "Next Day Air Letter" sent to Statewide on November 27 was marked "RETURN TO SHIPPER" with the notations "THIS PACKAGE HAS BEEN RETURNED BECAUSE: Closed up by F.B.I." and "Out of business".
 
 
 8
 On November 25, 1991, Statewide sought an order to show cause
 
 
 9
 [w]hy an Order should not be entered by this Court, pursuant to Rule E(5) of the Supplementary [sic ] Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, releasing Defendant STATEWIDE'S property, both real and personal, which has been attached by the United States Marshal * * * and dismissing Plaintiff's Complaint against STATEWIDE AUTO PARTS, INC. for insufficiency and unconstitutionality[.]
 
 
 10
 Judge Nickerson ordered the government to respond and set argument for December 4, 1991.
 
 
 11
 Along with the order to show cause, Statewide submitted an affidavit of Edward P. Muro, Statewide's secretary-treasurer, which stated that the Keteltas declaration, "while perhaps appearing to be of substance at first blush, upon closer scrutiny is revealed to be just a collection of unsubstantiated speculations and innuendos as relate to STATEWIDE that hardly justify [sic ] the imposition of the extreme penalty of extinction." Importantly, while the Edward Muro affidavit called into question some of the legal conclusions drawn by the government, it did not dispute any of the factual allegations contained in the Keteltas declaration.
 
 
 12
 The Edward Muro affidavit also contained this exhortation:
 
 
 13
 [W]e urge that the draconian type procedure employed in this non-drug, non-violence case that permit [sic ] such a pre-judgment, ex-parte [sic ] seizure and attachment of real and personal property and does not provide for a prompt post-seizure hearing is violative of our Fifth and Fourteenth Amendment rights to due process of law, even despite the fact that the property in question is commercial rather than residential. Particularly, since there is no emergency situation that triggered the governmental action--the last allegation of wrongdoing by STATEWIDE contained in the KETELTAS Declaration purportedly occurring months ago--and there is no allegation that STATEWIDE is currently engaged in ongoing wrongdoing.
 
 
 14
 Edward Muro's affidavit concluded by noting that the seizure and closure of Statewide was "causing what will soon become irreparable injury to the business and reputation of the corporation * * * it has already wreaked havoc with our customers since the marshal's [sic ] had initially posted signs proclaiming that we were out of business, and we will be permanently out of business if we are forced to remain closed until this forfeiture action is heard and determined" (emphasis in original).
 
 
 15
 Detective Keteltas then submitted a supplemental declaration which indicated, inter alia, that more than a dozen individuals--including claimant Muro--had been arrested on November 19 by the Nassau County Police Department for crimes related to the automobile-laundering scheme. This supplemental declaration further detailed the ongoing criminal activity which had been taking place on the premises of the various named corporations, including Statewide.
 
 
 16
 Judge Nickerson heard oral argument on the order to show cause on December 4, 1991. Noting that "[t]he object of our motion really is to have the Court allow our clients to continue doing business until the trial of this action", Statewide's attorney argued to the district court that since there was no "emergency" or exigent circumstance justifying a pre-notice seizure, the property should be summarily returned to Muro and Statewide. However, no evidence other than the already-submitted affidavits was presented. Judge Nickerson declined to vacate the seizure; he did, however, accord Muro and Statewide further opportunity to make evidentiary submissions. Statewide's attorney represented that he would make a further submission on his clients' behalf on December 6.
 
 
 17
 On December 6, however, Statewide submitted only the affidavit of its attorney, which did little more than repeat the arguments set forth in the Edward Muro affidavit. Even then, no evidentiary hearing was requested. On December 16 Judge Nickerson denied Statewide and Muro's motions, concluding that
 
 
 18
 [n]one of the papers submitted on behalf of the movants has refuted the substance of the statements made by Detective Keteltas in his declaration in support of the warrant or in his supplemental declaration submitted upon the motions. Thus there seems to be only a slight risk of erroneous deprivation of the movants' interest by reason of the issuance of the warrant. The allegations in the declarations by Detective Keteltas more than satisfied this court that there was probable cause to believe that the property to be seized was involved in transactions in violation of 18 U.S.C. § 1956.
 
 
 19
 A notice of appeal styled "Doe, Plaintiff, against Doe, Defendant" was filed on January 7, 1992. The anonymity was necessary because the district court's file had been sealed. The appeal was initially dismissed on January 24, 1992, for failure to comply with the requirements of this court's Civil Appeal Management Plan, but the dismissal was vacated and the case restored to the calendar on an expedited basis by order of this court dated February 20, 1992.
 
 
 20
 Since the district court's record was unsealed only after the notice of appeal was filed, some confusion remains as to the proper identity of the parties on this appeal. While the first official caption gives the impression that all of the named claimants are appealing from the district court's order, it is clear from the record and the briefs that this appeal pertains only to Muro and his company, Statewide. Thus, we have directed the clerk to change the official caption to indicate only Muro as a Claimant-Appellant.
 
 
 21
 We note, merely for informational purposes, that after this appeal was filed, other claimants also petitioned the district court for return of their properties. See, e.g., United States v. All Assets of Statewide Auto Parts, Inc., 789 F.Supp. 537 (E.D.N.Y.1992) (denying motion of John, Charles, and Jenny Carneglia to dismiss complaint and vacate warrant of arrest and seizure as to defendant Citiwide Auto Parts, Inc.).
 
 DISCUSSION
 
 22
 A. Appellate Jurisdiction.
 
 
 23
 The government urges us to dismiss this appeal at the outset for lack of appellate jurisdiction. Muro, on the other hand, asserts that we have jurisdiction either under the collateral order doctrine, see Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), or under 28 U.S.C. § 1292(a)(1), relating to injunctions.
 
 
 24
 We conclude that the district court's interlocutory order, which required the businesses to remain closed, has all of the effects of an injunction and thus is appealable under 28 U.S.C. § 1292(a)(1). See United States v. Monsanto, 836 F.2d 74, 77 (2d Cir.1987), vacated in banc on other grounds, 852 F.2d 1400 (2d Cir.1988) (per curiam ); see also United States v. Unit No. 7 & Unit No. 8, 853 F.2d 1445, 1448 (8th Cir.1988), vacated in banc on other grounds, 890 F.2d 82 (8th Cir.1989). Indeed, the ex parte seizure warrant, combined with the district court's subsequent refusal to vacate the seizure, has the same effect as if the district court had enjoined Muro and Statewide from operating their businesses. Whether or not the order is called an "injunction" is irrelevant; we are bound neither by titles nor by the district court's own conception of its order. See Glen-Arden Commodities, Inc. v. Costantino, 493 F.2d 1027, 1030 n. 2 (2d Cir.1974).
 
 
 25
 We note, moreover, that the consequences of the district court's order--the shutdown of an ongoing business enterprise and the ensuing loss of good will (defined by one court as the "expectation that the old customers will resort to the old place", see Commissioner v. Killian, 314 F.2d 852, 855 (5th Cir.1963) (internal quotations and citation omitted))--are even more dire than if the district court had appointed a receiver to run Statewide pending final disposition of this case. Since § 1292(a)(2) grants the courts of appeals jurisdiction over appeals from "[i]nterlocutory orders appointing receivers," an order with such final and irrevocable consequences as the one before us must also be appealable.
 
 
 26
 Had the government entered into an occupancy agreement with the owners and operators of Statewide, as was done in others of our pre-hearing seizure cases, see United States v. 141st Street Corp., 911 F.2d 870, 873 (2d Cir.1990) (141st Street Corp.), cert. denied, --- U.S. ----, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991) and United States v. Premises and Real Property at 4492 South Livonia Road, 889 F.2d 1258, 1265 (2d Cir.1989), rehearing denied, 897 F.2d 659 (2d Cir.1990) (Livonia ), the district court's order probably would not have been appealable, as the status quo would have been preserved, and the order would lack the draconian restraints of an injunction and the intrusions of a receiver. Although the tangible property of the claimant can be returned post-trial, should the district court's assessment of the government's case prove to be incorrect, the business itself would at that point be drained of any good will by the summary closing, because the old customers would by then have resorted to new places. We thus conclude that where a pre-trial seizure pursuant to an ex parte warrant effectively shuts down an ongoing business, an order denying vacatur of the seizure is appealable, because it has all of the earmarks of an injunction, and "the damage of error unreviewed before the judgment is definitive and complete has been deemed greater than the disruption caused by intermediate appeal." DiBella v. United States, 369 U.S. 121, 124, 82 S.Ct. 654, 657, 7 L.Ed.2d 614 (1962) (citation omitted).
 
 
 27
 B. Due process.
 
 
 28
 Having determined that we have jurisdiction over this appeal, we next address Muro's arguments that the seizure of Statewide's assets, without a prior hearing or prompt post-seizure hearing, violated due process.
 
 
 29
 1. The Mathews v. Eldridge factors.
 
 
 30
 The due process clause of the fifth amendment--"No person shall be * * * deprived of life, liberty, or property, without due process of law"--has generally been read to require the government to afford procedural safeguards before it deprives a person of one of these fundamental rights. The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." Joint Anti-Fascist Comm. v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 647, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). In certain limited circumstances, however, process may be postponed until after deprivation where an important governmental interest is accompanied by assurances that the deprivation is warranted. Strong v. Board of Educ., 902 F.2d 208, 212 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 250, 112 L.Ed.2d 208 (1990).
 
 
 31
 Our prior cases involving the government's powerful forfeiture arsenal--notably Livonia and 141st Street Corp.--have used the balancing test articulated in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) to determine whether a pre-hearing seizure of property violates due process. The Mathews calculus instructs us to determine the constitutional adequacy of the ex parte procedure, by balancing (a) the private interest involved, (b) the risk of an erroneous deprivation of that interest through the procedures utilized, as well as the probable value of additional procedural safeguards, and (c) the government's interest, including the burden that additional procedural requirements would impose. See 141st Street Corp., 911 F.2d at 874; Livonia, 889 F.2d at 1264-65.
 
 
 32
 a. The private interest.
 
 
 33
 In Livonia, the private interest at stake was the claimant's interest in his home, an interest which we noted "merits special constitutional protection." Id. at 1264. However, in Livonia, we also noted that the claimant's "interest in his home was not in any way diminished by the occupancy agreement entered into with the government, since that agreement allowed continued occupancy as a matter of grace, not entitlement." Id. at 1265. In contrast, the interest at stake in 141st Street Corp. was "ownership and possession of an apartment building for commercial purposes", 911 F.2d at 875, which "is different from, and indeed less than, a similar expectation in an individual's home." New York v. Burger, 482 U.S. 691, 700, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987) (approving warrantless administrative inspection of the closely-regulated automobile-junkyard and vehicle-dismantling industries). Despite this lower interest, the government in 141st Street Corp., when it took control of the apartment building and fifteen individual apartment units, entered into occupancy agreements with the remaining tenants.
 
 
 34
 Here, the property interest which has been affected by the government's actions is the ownership, possession, and operation of an ongoing business. While it is true that a commercial property interest "traditionally has not occupied the same privileged place as the home" in the eyes of the law, 141st Street Corp., 911 F.2d at 875, it is also true that the extent of the invasion of the property interest here was far greater than in either Livonia or 141st Street. Livonia 's occupancy agreement did "not in any way diminish[ ]" the homeowner's interest in his home. But here, of course, the government shut Statewide down completely instead of pursuing some less-intrusive means, such as entering into an occupancy agreement, or appointing a receiver to run the business during the pendency of the forfeiture proceedings. Thus, while the commercial property interest involved here may be less substantial than the residential property interest at issue in Livonia, the invasion of that interest--nonexistent in Livonia--is far greater here.
 
 
 35
 The invasion of property rights here is similarly much more substantial than that involved in 141st Street Corp. There, the government seized a commercial interest (an apartment building) from its owners, but preserved its viability as a commercial enterprise by evicting only tenants who were involved in drug activity (none of whom challenged their evictions) and entering into occupancy agreements with the remaining tenants. 911 F.2d at 873. Thus, in 141st Street Corp. the government took action which sought to preserve the status quo ante seizure.
 
 
 36
 Of course, the government's ex parte seizure here was unaccompanied by any attempt to preserve the claimants' property rights.
 
 
 37
 b. Risk of error and value of additional procedures.
 
 
 38
 In both Livonia and 141st Street Corp., we concluded that the judicial procedures employed by the government afforded "some measure of protection from an erroneous deprivation of property", 141st Street Corp., 911 F.2d at 875, since "an ex parte probable cause determination before a judicial officer reduces the possibility of an erroneous deprivation", even though "preseizure notice and an opportunity to be heard would certainly further minimize that risk." Livonia, 889 F.2d at 1265. Virtually the same judicial procedure was utilized in this case; thus, this Mathews factor weighs no more heavily than it did in either Livonia or 141st Street Corp.
 
 
 39
 c. The government's interest.
 
 
 40
 This brings us to the third Mathews factor, "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335, 96 S.Ct. at 903. On its face, the government's interest here is similar to those in Livonia and 141st Street Corp.--"the narrow one of obtaining pre-notice seizure of a fixed item like a home, not the broad interest of enforcing the [money laundering] laws, since the latter will also be served by forfeiture after an adversary proceeding." Livonia, 889 F.2d at 1265; see also 141st Street Corp., 911 F.2d at 875.
 
 
 41
 In assessing the strength of the government's interest in obtaining pre-notice seizure, we look to whether "exigent" or "extraordinary" circumstances are present by referring to the factors enunciated in Fuentes v. Shevin, 407 U.S. 67, 91, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972). Exigent circumstances are present when (1) the seizure is necessary to secure an important governmental or public interest, (2) very prompt action is necessary, and (3) a government official initiated the seizure by applying the standards of a narrowly-drawn statute. Fuentes, 407 U.S. at 91, 92 S.Ct. at 2000; 141st Street Corp., 911 F.2d at 875; Livonia, 889 F.2d at 1263.
 
 
 42
 (1) Necessity.
 
 
 43
 Judge Nickerson concluded that "[t]he United States ha[s] a clear interest in stopping the trafficking in stolen motor vehicles and motor vehicle parts with vehicle identification numbers removed or altered." The government articulates this interest as "halting financial transactions designed to facilitate, and conceal the proceeds of, a highly-sophisticated and wide-ranging auto theft scheme." The government adds that it also has strong interests in (a) preventing mail fraud and the bribery of a public official, and (b) ensuring that the district court maintains in rem jurisdiction over the defendants so that this action may be properly prosecuted.
 
 
 44
 We have no quarrel with the government's asserted interest in preventing mail fraud and bribery, but their actions somewhat belie their words. No federal indictment charging violations of the federal bribery or mail fraud statutes has yet taken place. In view of that fact, we have some fears that the forfeiture statute is being used here as a substitute--or perhaps as a dry run--for a criminal prosecution. The protections available to defendants in criminal prosecutions are well-known: the government (1) must prove its case beyond a reasonable doubt, (2) may avail itself only of limited court-approved discovery, and (3) has no right of appeal from an adverse verdict. All of these protections are absent in a civil forfeiture action. Further, the property owner in a civil forfeiture action--not the government--generally has the burden of proof, and hearsay is admissible to prove the "guilt" of the property. Should a criminal action be tried first, a defendant's acquittal has no collateral estoppel effect on the forfeiture action in view of the lower civil standard of proof. United States v. One Assortment of 89 Firearms, 465 U.S. 354, 362, 104 S.Ct. 1099, 1104-05, 79 L.Ed.2d 361 (1984).
 
 
 45
 Additionally, by trying a federal forfeiture action, and only then a state criminal proceeding, the state and federal governments could conceivably avail themselves of not two, but three bites at the proverbial apple. Initially, the federal government could utilize the forfeiture proceeding and all of its concomitant procedural advantages to gather evidence and "test" the case. Then, the state could prosecute the individual and corporate defendants in state court for violations of state law. Since the doctrine of dual sovereignty prevents the application of the double jeopardy clause in such circumstances, the federal government could also prosecute the same defendants--for the same offenses--in federal court. See Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). But see United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive, Babylon, New York, 954 F.2d 29, 35 (2d Cir.1992) ("when an individual is subjected to a 'civil' sanction that in effect is punishment[, he] is protected against multiple punishments under the Double Jeopardy Clause"), petition for cert. filed, 60 U.S.L.W. 3755 (U.S. Apr. 20, 1992) (No. 91-1682).
 
 
 46
 In any event, the government has a clear interest in stopping the trafficking in stolen motor vehicles and motor vehicle parts, as Judge Nickerson concluded. Similarly, we agree with Judge Nickerson that the government has a strong interest in stopping the fraudulent conveyance of these vehicles to fictitious persons.
 
 
 47
 (2) Prompt action required.
 
 
 48
 As to whether prompt action was required to secure this interest, we cannot agree with the government's argument that mere allegations of ongoing criminal activity, standing alone, justify pre-notice seizure and the shutdown of a thriving business. The government adds, however, yet another reason why prompt action was required here: "pre-seizure hearing on notice would have served only to allow claimants the opportunity to remove any valuable assets of Statewide and/or cause waste to the defendant property and premises" (emphasis added). This reasoning is at best ironic: had the government taken a less-drastic action, such as appointing a receiver to run Statewide during the pendency of the forfeiture proceedings, or entered into the sort of occupancy agreement which we have heretofore favored, great "waste" could have been avoided at Statewide. In short, it is the government's choice of action--pre-hearing shutdown of an ongoing business--which is causing the "waste".
 
 In Livonia we said:
 
 49
 As a general matter, a showing of exigent circumstances seems unlikely when a person's home is at stake, since, unlike other forms of property, a home cannot be readily moved or dissipated. Cf. United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency, 461 U.S. 555, 562 & n. 12, 103 S.Ct. 2005, 2011 [&] n. 12; 76 L.Ed.2d 143 (1983) (seizure of currency); Calero-Toledo [v. Pearson Yacht Leasing Co.], 416 U.S. [663,] 679, 94 S.Ct. [2080,] 2089 [40 L.Ed.2d 452 (1974) ] (seizure of pleasure yacht). Any exigency that might be posed by the threat of an encumbrance on, or transfer of, the property may be met by less restrictive means than seizure, for example, by the filing of a lis pendens, as was done in this case, along with a restraining order or bond requirement.
 
 
 50
 Livonia, 889 F.2d at 1265. What we said of Serafine's home in Livonia applies with full force to Muro's business here. Obviously, the defendant "Real Property and Premises Known as 1256 Grand Street, Brooklyn, New York"--Statewide's place of business--is not going to disappear overnight. True, the stolen automobiles arguably would have possessed the same "movability" concerns as did the pleasure yacht in Calero-Toledo, but--as the government conceded at oral argument--no automobiles were seized by the United States.
 
 
 51
 Concerning the remaining assets, the government had at its disposal numerous less-restrictive means for limiting their movement or dissipation. A receivership, an occupancy agreement, and a lis pendens--invoked separately or togetherwould have served the government's interest more than adequately, and would have simultaneously avoided the serious, irreparable damage caused by the summary shutdown of an ongoing business enterprise.
 
 
 52
 (3) Procedures utilized.
 
 
 53
 The ex parte procedures used here were virtually identical to those we permitted in 141st Street Corp., 911 F.2d at 875, and Livonia, 889 F.2d at 1260. However, on balance, the lack of exigent circumstances combined with the drastic measures taken by the government lead us to the conclusion that the district court's decision, approving this ex parte, pre-notice seizure, was erroneous.
 
 
 54
 2. Muro's likelihood of success on the merits.
 
 
 55
 Our conclusion of error does not mean, however, that the seizure must now be vacated. Due process requires notice and the opportunity to be heard at a meaningful time. After the seizure of Statewide's assets, Muro was given ample opportunity to be heard and to be heard promptly, yet he presented nothing that would require a contrary result. We are thus constrained to agree with Judge Nickerson that "[n]one of the papers submitted on behalf of the movants has refuted" the government's case, and we will not disturb the district court's ultimate decision not to vacate the seizure of Statewide's assets. While the Muros and their attorneys have raised impassioned polemics against the forfeiture system--pleas which do not fall on entirely deaf ears in this court--they provided no reason whatsoever for the district court to hold an evidentiary hearing, let alone to vacate the seizure. Muro has been provided the opportunity to be heard on paper, and he has produced nothing of evidentiary value that would cause the district court to vacate or modify the seizure. Finally, Muro never requested an evidentiary hearing in the district court. Put slightly differently, Muro, who will bear the burden of proof at the forfeiture trial, see 19 U.S.C. § 1615, has thus far shown no likelihood of success on the merits.
 
 
 56
 Of course, "an illegal seizure of property does not immunize that property from forfeiture, * * * the property itself cannot be excluded from the forfeiture action, and * * * evidence obtained independent of the illegal seizure may be used in the forfeiture action." United States v. $37,780 in United States Currency, 920 F.2d 159, 163 (2d Cir.1990). The unlawfulness of the initial seizure "would only preclude the government from introducing any evidence gained by its improper seizure of the premises" pursuant to the warrant of November 15, 1991. Livonia, 889 F.2d at 1266.
 
 CONCLUSION
 
 57
 We continue to be enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for due process that is buried in those statutes. The district courts, in order to preserve some modicum of due process to criminal defendants (and civil forfeiture claimants) should be vigilant in approving seizures ex parte only upon a showing of the most extraordinary or exigent circumstances, and whenever possible should favor less drastic measures, such as occupancy agreements, bonds, receiverships, lis pendens, or other means for preserving the status quo ante seizure until the criminality underlying the claimed forfeiture can be established in the context of a proper criminal proceeding with its attendant constitutional protections to the accused. In addition, because of the troublesome fifth amendment problems potentially generated by the government's use of the civil forfeiture statutes, district courts--absent some sort of extraordinary situation--should exercise their discretion to stay civil forfeiture proceedings pending the completion of related criminal proceedings against the claimants. Through such courageous and sensitive application of their discretionary powers the district courts can then ensure that "due process" remains a reality and is not reduced to a mere encomium.
 
 
 58
 Because Muro has failed to show that any greater process would have altered the result at this stage of this forfeiture action, the order of the district court is affirmed.
 
 
 59
 VAN GRAAFEILAND, Circuit Judge, concurring in part and dissenting in part:
 
 
 60
 Although I agree with my colleagues that the government's seizure of appellants' property should not be vacated, I cannot agree with the reasoning that preceded their ultimate decision. Accordingly, I write separately.
 
 
 61
 At the outset, I do not believe that there is an appealable interlocutory order in this case. Although the appeal is addressed to the district court's order of December 16, 1991, the due process issue that this court is asked to resolve arises out of the warrant order signed by Judge Nickerson on November 15, 1991. If the November 15 order cannot be challenged on due process grounds, neither can the December 16 order. There can be no separate due process challenge to the December 16 order. See Seguros Banvenez S.A. v. S/S Oliver Drescher, 715 F.2d 54, 56 (2d Cir.1983) (motion to vacate attachment generally nonappealable).
 
 
 62
 Indeed, instead of the December 16 order supporting defendants' due process argument, it weakens it. In arguing the unconstitutionality of the November 15 seizure, the defendants emphasize the absence of a post-seizure hearing. Their application which led to the December 16 order was an appropriate vehicle for securing the post-seizure hearing to which defendants say they were entitled. As discussed in the majority opinion, page 900, appellants submitted no new evidence to the district court in their December application and did not request an evidentiary hearing. It was available to them if they wanted it. Like any other interlocutory order in a civil action, the December 16 order was not engraved in stone. It could be dissolved or amended at any time. Moreover, even if the November 15 order was constitutionally deficient, the deficiency did not invalidate the seizure; its only effect was to create a ban on the use of evidence obtained from the seizure. It cannot be said to have "serious, perhaps irreparable" consequences that "can be 'effectually challenged' only by immediate appeal," and thus to warrant its treatment as if it were a preliminary injunction. See Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 997, 67 L.Ed.2d 59 (1981); H & S Plumbing Supplies, Inc. v. BancAmerica Commercial Corp., 830 F.2d 4, 7 (2d Cir.1987); see also Drys Shipping Corp. v. Freights, Sub-Freights, Charter Hire, 558 F.2d 1050, 1051 (2d Cir.1977). I therefore would treat the December 16 order as a nonappealable interlocutory order.
 
 
 63
 Assuming, however, that the December 16 order is appealable, I would hold on the merits that it did not violate the defendants' right to due process. Section 981(b)(2) of United States Code Title 18 provides in pertinent part that property seized under paragraph (1) of section 981(b) shall be "upon process issued pursuant to the Supplemental Rules for certain Admiralty and Maritime Claims." This is not a novel requirement. District courts were given Admiralty and Maritime jurisdiction in 1789, see Act of September 24, 1789, ch. 20, § 9, 1 Stat. 73, 76, and the first set of maritime rules was promulgated in 1844. See Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. De Navegacion, 773 F.2d 1528, 1533 (11th Cir.1985). The first confiscatory act of the Civil War, Act of August 6, 1861, 12 Stat. at L. 319, as interpreted by the Supreme Court, provided that condemnation of the property at issue therein was to be conducted in general conformity with the practice in admiralty. See Four Hundred and Forty-Three Cans of Frozen Egg Prods. v. United States, 226 U.S. 172, 181, 33 S.Ct. 50, 52, 57 L.Ed. 174 (1912); Union Ins. Co. v. United States, 73 U.S. (6 Wall.) 759, 763-64, 18 L.Ed. 879 (1868). Because of the basic similarity in the concepts underlying the two in rem proceedings, this provision made sense, and the practice of utilizing admiralty procedures in in rem proceedings continues to the present day. Thus, conformity provisions similar to those in the civil forfeiture statute at issue herein, which deals with unlawful monetary transactions, may be found in the Federal Food, Drug, and Cosmetic Act, see 21 U.S.C. § 334(b), the Federal Hazardous Substances Act, see 15 U.S.C. § 1265(b), and the Controlled Substances Act, see 21 U.S.C. § 881(b).
 
 
 64
 Seizures without prior judicial approval have been held to meet constitutional standards under each of these acts. See Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 598-600, 70 S.Ct. 870, 872-873, 94 L.Ed. 1088 (1950) (Federal Food, Drug, and Cosmetic Act); United States v. An Article of Device "Theramatic", 715 F.2d 1339, 1342-43 (9th Cir.1983) (same), cert. denied, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 685 (1984); United States v. Articles of Hazardous Substance, 588 F.2d 39, 43 (4th Cir.1978) (Federal Hazardous Substances Act); United States v. Banco Cafetero Panama, 797 F.2d 1154, 1162 (2d Cir.1986) (Controlled Substances Act).
 
 
 65
 Prior to the amendment in 1985 of Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims, there was no requirement that a warrant of seizure be approved by a judge before it was issued. Rule C(3) changed this by providing for court review of an application for an in rem seizure before the clerk issued a warrant. While this proposed change was under consideration by the Rules Advisory Committee, the Department of Justice expressed concern that if the requirement for judicial approval was applied to federal forfeiture statutes, it would seriously damage efforts to increase the use of civil forfeitures, particularly in the area of drug enforcement. See Diana G. Culp, Charting a New Course: Proposed Amendments to the Supplemental Rules for Admiralty Arrest and Attachment, 103 F.R.D. 319, 347 (1985). Influenced by the merit of this contention, the Committee recommended that the requirement of pre-seizure judicial approval not apply to actions by the United States for forfeitures based on federal statutory violations. The Committee published the following explanatory statement for this exception:
 
 
 66
 The foregoing requirements for prior court review or proof of exigent circumstances do not apply to actions by the United States for forfeitures for federal statutory violations. In such actions a prompt hearing is not constitutionally required, United States v. Eight Thousand Eight Hundred and Fifty Dollars, 461 U.S. 555 [103 S.Ct. 2005, 76 L.Ed.2d 143] (1983); Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663 [94 S.Ct. 2080, 40 L.Ed.2d 452] (1974), and could prejudice the government in its prosecution of the claimants as defendants in parallel criminal proceedings since the forfeiture hearing could be misused by the defendants to obtain by way of civil discovery information to which they would not otherwise be entitled and subject the government and the courts to the unnecessary burden and expense of two hearings rather than one.
 
 
 67
 103 F.R.D. 351, 356.
 
 
 68
 Calero-Toledo, supra, 416 U.S. 663, 94 S.Ct. 2080, involved the seizure of a yacht without prior notice or hearing pursuant to the Controlled Substances Act of Puerto Rico, P.R.Laws Ann. tit. 24, § 2101 et seq. (Supp.1973). Id. at 665, 94 S.Ct. at 2082-83. Rejecting the due process challenge, the Court said:
 
 
 69
 Appellants challenge the District Court's holding that the appellee was denied due process of law by the omission from § 2512(b), as it incorporates § 1722, of provisions for preseizure notice and hearing. They argue that seizure for purposes of forfeiture is one of those " 'extraordinary situations' that justify postponing notice and opportunity for a hearing." Fuentes v. Shevin, 407 U.S., at 90, 92 S.Ct., at 1999; see Sniadach v. Family Finance Corp., 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969); Boddie v. Connecticut, 401 U.S. 371, 378-379, 91 S.Ct. 780, 786-787, 28 L.Ed.2d 113 (1971). We agree.
 
 
 70
 Id. at 676-77, 94 S.Ct. at 2088-89.
 
 
 71
 United States v. Eight Thousand Eight Hundred and Fifty Dollars, supra, 461 U.S. 555, 103 S.Ct. 2005, involved an alleged delay in filing a forfeiture proceeding pursuant to section 231 of the Bank Secrecy Act of 1970, now codified at 31 U.S.C. § 5316. See id. at 556-57, 103 S.Ct. at 2007-08. Although the appellant in that case conceded that the Government could constitutionally seize her property without a prior hearing, id. at 562, 103 S.Ct. at 2010-11, Justice O'Connor, writing for the Court, deemed it important to emphasize the correctness of this concession:
 
 
 72
 The general rule, of course, is that absent an "extraordinary situation" a party cannot invoke the power of the state to seize a person's property without a prior judicial determination that the seizure is justified. (citations omitted) But we have previously held that such an extraordinary situation exists when the government seizes items subject to forfeiture. In Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Court upheld a Puerto Rico statute modeled after a federal forfeiture statute, 21 U.S.C. § 881(a), which allowed Puerto Rican authorities to seize, without prior notice or hearing, a yacht suspected of importing marihuana. Pearson Yacht clearly indicates that due process does not require federal customs officials to conduct a hearing before seizing items subject to forfeiture. Such a requirement would make customs processing entirely unworkable. The government interests found decisive in Pearson Yacht are equally present in this situation: the seizure serves important governmental purposes; a preseizure notice might frustrate the statutory purpose; and the seizure was made by government officials rather than self-motivated private parties.
 
 
 73
 Id. at 562 n. 12, 103 S.Ct. at 2011 n. 12.
 
 
 74
 After these two opinions were written, Congress broadened the scope of federal forfeiture provisions so as to make real property as well as personal property subject to forfeiture thereunder. See 18 U.S.C. § 981(a)(1) and 21 U.S.C. § 881(a)(7). Congress also implicitly signified its approval of pre-hearing seizures by authorizing seizure to be made on the basis of a warrant issued in the same manner as is provided for a search warrant under the Federal Rules of Criminal Procedure. See §§ 981(b)(2)(B) and 881(b). Fed.R.Crim.P. 41 permits a search warrant to be issued by a judicial officer without a hearing. This accords with the traditional requirement of due process, which is that a neutral judicial officer determine whether there is probable cause to conduct the search. See Steagald v. United States, 451 U.S. 204, 212, 101 S.Ct. 1642, 1647-48, 68 L.Ed.2d 38 (1981); Shadwick v. City of Tampa, 407 U.S. 345, 350, 92 S.Ct. 2119, 2122-23, 32 L.Ed.2d 783 (1972); Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 368-69, 92 L.Ed. 436 (1948).
 
 
 75
 The Government secured Judge Nickerson's approval for the warrant to issue in the instant case. I disagree with my colleagues' holding that this was not constitutionally sufficient. In United States v. The Premises and Real Property at 4492 South Livonia Road, 889 F.2d 1258 (2d Cir.1989), the case upon which my colleagues principally rely, the panel held that section 881(a)(7) was unconstitutional as applied to the seizure of a home, id. at 1263, but not as applied to the forfeiture of the same home. Although this reasoning, which I personally find somewhat lacking in logic, establishes circuit law, that law is narrow in scope and has little precedential effect in the instant case. Section 881(a)(7) plays no role here; we are dealing with section 981(a)(1). I am not prepared to hold that section 981(a)(1) is unconstitutional as applied to the seizure of defendants' interests herein.
 
 
 76
 Courts customarily look to specific factors to justify pre-hearing seizures under governmental forfeiture statutes, among which are the following:
 
 
 77
 1. The protection of the public from personal or financial harm. See Calero-Toledo, supra, 416 U.S. at 679, 94 S.Ct. at 2089-90; An Article of Device "Theramatic," supra, 715 F.2d at 1342. As Justice Marshall, writing for the Court in Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 300, 101 S.Ct. 2352, 2372-73, 69 L.Ed.2d 1 (1981), said, "deprivation of property to protect the public health and safety is '[o]ne of the oldest examples' of permissible summary action." (citations omitted)2. The raising of revenue to assist the government in its law enforcement efforts. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 629, 109 S.Ct. 2646, 2654, 105 L.Ed.2d 528 (1989); United States v. Two Thousand Five Hundred Dollars, 689 F.2d 10, 13 (2d Cir.1982); see Phillips v. Comm'r, 283 U.S. 589, 595-97, 51 S.Ct. 608, 611-12, 75 L.Ed. 1289 (1931).
 
 
 78
 3. The prevention of further illicit use of the forfeited property and the enforcement of criminal sanctions. Calero-Toledo, supra, 416 U.S. at 679, 94 S.Ct. at 2089-90; see Two Thousand Five Hundred Dollars, supra, 689 F.2d at 13.
 
 
 79
 4. The prevention of the destruction or removal of incriminating property by alerted defendants. Calero-Toledo, supra, 416 U.S. at 679, 94 S.Ct. at 2089-90.
 
 
 80
 If some or all of these factors play a significant role in the government's decision to proceed with a pre-hearing forfeiture seizure, the seizure does not violate a defendant's right to due process. Our holding in The Premises and Real Property at 4492 South Livonia Road, supra, 889 F.2d 1258, is not authority to the contrary. In denying a petition for rehearing in that case, we said:
 
 
 81
 And nothing that we have said precludes the government from using the seizure provision where exigent circumstances, demonstrated ex parte to the satisfaction of a judicial officer, justify a seizure without prior notice and hearing.
 
 
 82
 897 F.2d 659, 661 (2d Cir.1990).
 
 
 83
 In United States v. 141st Street Corp., by Hersh, 911 F.2d 870 (2d Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991), which involved the seizure of an apartment building without a pre-seizure hearing, we said:
 
 
 84
 To find that "exigent" or "extraordinary" circumstances are present, we must conclude that (1) seizure was necessary to secure an important governmental or public interest, (2) very prompt action was necessary, and (3) a government official initiated the seizure by applying the standards of a narrowly drawn statute.
 
 
 85
 Id. at 875.
 
 
 86
 Referring to these criteria, the court below said:
 
 
 87
 The Court of Appeals for the Second Circuit in United States v. 141 St. Corp. by Hersh, 911 F.2d 870, 874-76 (2d Cir.1990), cert. denied, [--- U.S. ----], 111 S.Ct. 1017 [112 L.Ed.2d 1099] (1991), set forth the criteria this court should use in determining whether a seizure warrant should be issued ex parte. Applying those criteria, this court concludes that the warrant was validly issued ex parte.
 
 The court below continued as follows:
 
 88
 The United States had a clear interest in stopping the trafficking in stolen motor vehicles and motor vehicle parts with vehicle identification numbers removed or altered. The United States also had an interest in stopping the fraudulent conveyance of those vehicles to fictitious persons.
 
 
 89
 The United States had a reasonable concern that the property would continue to be used as an instrumentality of crime. In fact the supplemental declaration of Detective Keteltas shows that the property was continuing to be used in the criminal manner set forth in the complaint.
 
 
 90
 The foregoing findings were not clearly erroneous. Moreover, although this was not discussed by the district court, we may take judicial notice that the statute at issue is a revenue producing act. It has been reported that in 1989 alone some $600 million in personal assets and real property were forfeited to the Government. See Lawrence A. Kasten, Extending Constitutional Protection to Civil Forfeitures That Exceed Rough Remedial Compensation, 60 Geo.Wash.L.Rev. 194, 194 n. 2 (1991).
 
 
 91
 Assuming that the district court's order directing issuance of the seizure warrant is presently challengeable, I would reject the challenge. See United States v. One Parcel of Property Located at 15 Black Ledge Drive, 897 F.2d 97, 98 (2d Cir.1990); United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd., 803 F.2d 625, 628 (11th Cir.1986).
 
 
 92
 I agree wholeheartedly with the expression of concern contained in the majority's "Conclusion". However, I take no position with regard to the majority's suggestions that follow this expression, which I consider to be nonbinding dicta.