IN RE the SEIZURE OF ANY AND ALL FUNDS ON DEPOSIT IN WELLS FARGO BANK, NA ACCOUNT NUMBER xxxxxxxxxxxxxx Held in the Name of Roger and Sons, Inc., up to and Including the Sum of Five Hundred Ninety–Seven Thousand Nine Hundred Twenty Dollars ($597,-920) In United States Currency, and All Proceeds Traceable Thereto.

No. 14–MC–0325 (ADS).

United States District Court, E.D. New York.

Signed June 9, 2014.

Kase & Druker, Esqs., by: Paula Schwartz Frome, Esq., of Counsel, Garden City, NY, Attorneys for the Movant Roger & Sons, Inc.

Loretta E. Lynch, United States Attorney, United States Department of Justice, by: Melanie D. Hendry, Laura D. Mantell, Assistants, U.S. Attorneys, of Counsel, Brooklyn, NY, Attorneys for the Respondent the United States.

## *MEMORANDUM OF DECISION AND ORDER*

SPATT, District Judge.

On March 21, 2014, Roger & Sons, Inc. (the "Movant" or the "Company"), initiated this motion by filing an Order to Show Cause seeking the release of the sum of $294,397.11 and all further amounts frozen, constituting the funds in Wells Fargo Bank NA account number xxxxxxxxxxxxx held in the name of Roger & Sons, Inc. (the "Subject Account"). On April 4, 2014, the Court granted Rogers & Sons request for a hearing concerning the Government's seizure of the Movant's funds. For the reasons that follow, the Court denies the Movant's motion in its entirety.

## I. *BACKGROUND*

The Movant is a New York Corporation that sells commercial restaurant equipment in New York City. The United States is the "Respondent."

According to the Respondent, from January 30, 2013 to September 26, 2013 (the "Relevant Period"), the Movant made sixty-eight structured cash deposits totaling approximately $597,920 into the Subject Account in violation of 31 U.S.C. § 5324(a)(3). In this regard, 31 U.S.C. § 5313 requires a domestic financial institution to file a Currency Transaction Report ("CTR") when it is involved in a transaction involving the payment, receipt or transfer of U.S. Currency in an amount greater than $10,000. When individuals take active steps to cause financial institutions to avoid filing CTRs so as to prevent the detection of the movement of large amounts of cash, called "structuring," they violate 31 U.S.C. § 5324(a)(3). These structuring steps involve making multiple cash deposits or withdrawals in amounts less than $10,000.01 on the same day or consecutive days before and after, in order to avoid the filing of CTRs.

In this case, the Respondent accuses the Movant of making sixty-eight structured cash deposits during the Relevant Period. Many of these deposits were in the $9,000 plus range, thus just under $10,000.01, and were made on consecutive days.

On January 29, 2014, in Case No. 14–MJ–83, United States Magistrate Judge William D. Wall found probable cause to believe that at least $597,920 was structured into the Subject Account during the Relevant Period and therefore, that these funds were subject to forfeiture under the provisions of 31 U.S.C. § 5317 as property involved in violations of 31 U.S.C. § 5324. Accordingly, Judge Wall issued a seizure warrant for the Subject Account. On or about February 14, 2014, the Respondent

seized funds from the Subject Account amounting to $293,397.11 (the "funds").

On March 21, 2014, the Movant commenced this action seeking the release of the funds. Relying on the provisions of 18 U.S.C. § 983(f), the Movant argues that the seizure of the funds is causing it substantial hardship and that should the funds be released, they will remain available at the time of trial. The Movant also claims that it has been denied due process and that its Eighth Amendment rights under the United States Constitution have been violated, because the Respondent seized the funds without affording the Movant a pre-seizure hearing or a prompt post-seizure hearing. Finally, the Movant alleges that it has not committed any structuring violations.

On April 2, 2014, the Respondent commenced a civil action *in rem* to forfeit and condemn to the use and benefit of the Government, the funds seized from the Subject Account on February 14, 2014 pursuant to the warrant issued by Judge Wall on January 29, 2014. The next day, on April 3, 2014, the Respondent filed a memorandum of law opposing the release of the funds to the Movant. In this regard, the Respondent argues that: (1) § 983(f) does not apply in this case because the Movant business had not been seized; (2) the Movant had not satisfied all of the factors required for the Court to grant relief under § 983(f), namely substantial hardship or that its potential hardship outweighs the risk that the funds will be dissipated during the pendency of the forfeiture proceeding; and (3) that the Movant's due process and Eighth Amendment claims are without merit.

On April 4, 2014, the parties appeared in response to the Movant's order to show cause. After the parties presented their arguments, the Court determined that it would afford the Movant a formal hearing to contest the seizure of the funds. The hearing was scheduled for April 9, 2014.

Thereafter, on April 8, 2014, the Respondent filed a letter asking the Court to only consider whether the Movant satisfied its entitlement to a hardship release of the seized funds pursuant to 18 U.S.C. § 983(f). The Respondent contended that the Movant was not entitled to a post-deprivation hearing in which it may challenge the underlying probable cause finding that authorized the seizure of the funds.

## II. *The Hearing*

The Hearing in this matter was held on April 9, 2014. As stated above, the Hearing involved the request by Movant Roger & Sons, Inc., for an Order pursuant to 18 U.S.C. § 983(f), releasing the sum of $293,397.11, held by the Government. Two witnesses testified, one for each party. In the Movant's case, Joseph Cirone testified. He is one of the principals of the Movant and has been the President of the company since 1985. The Movant sells food service equipment and supplies. The business is located at 268 Bowery Street in Manhattan, New York. In their business they receive payments in the form of cash, checks and credit cards. The company had one bank account which is with Wells Fargo Bank, in which deposits of cash, checks and wire transfers were made.

In January 2014, even though it was not served with a warrant of arrest, the Movant learned that their bank account was seized. There was a lien recorded on its account. The Movant did not learn how this lien originated. This activity by the Government had an adverse effect on the Movant's business. Checks written by the company were not paid. There was no money remaining in the Movant's account at Wells Fargo Bank. The company has eleven employees and had to pay rent and

payroll with funds in that account. In order to pay its employees, the Movant wrote checks from another company called Roger & Sons Wholesale, Inc., treated as a loan to the Movant. Also, the Movant paid its employees with payroll checks by Bowery Bay Realty Co., for the period from the last week of January 2014 and the first week of February 2014. The payroll checks were marked as a "loan.". (*See* Movant's Ex. B).

In addition, Cirone personally borrowed money from the 268 Bowery Realty Co. and also applied for a loan from the American Express Co. The loan and security agreement, in the sum of $179,000, is in evidence as Movant's Ex. C. Also in evidence is a check from 268 Bowery Realty Co. to Roger & Sons, Inc., in the sum of $40,000, representing a loan. .(*See* Movant's Ex. D). None of the loans have been repaid, not even in part, except that American Express charges the company $15,637.91 per month.

Cirone testified that these loans have not restored business lost as a result of the Government's action. He stated that the company cannot pay its bills without the funds at issue. However, there have been no additional loans applied for by the company. An effect of the Government seizure has been to make it extremely difficult for the Movant to pay vendors. January and February are slow months for the company and business picks up in March and April. Also, the summer is a quiet period. However, the Movant also made sure that it paid its bills on time. The company records its cash sales on a weekly basis. (*See* Movant's Ex. E). Then Cirone logs in taxable and non-taxable sales for the week. The non-taxable sales are wholesale sales. The sales are reported to the Movant's accountant on a monthly basis so he could calculate their sales tax. (*See* Movant's Ex. F).

The company uses cash to pay vendors and for its payroll and some cash is used throughout the course of the business. Cirone and his two partners each take $2,000 per week in cash as part of their payroll. His two partners are his brothers-in-law Anthony Saitta and Carl Saitta. The cash ledger is in evidence as Movant's Ex. G. The company deposit slips as to both cash and checks are also in evidence as Movant's Ex. H. Not all cash is deposited in the company's bank accounts. Some cash is "kept" in a locked drawer. On January 30 and 31, 2014, the company deposited $9,700 and had cash left over in the sum of $9,500. On February 1, 2014, the company deposited $5,350.

In February 2013, the company made eight deposits, each of which were close to $10,000. On March 28, 2013, the company made a cash deposit of $9,400, which sum it received from one of its customers.

Cirone also testified that some cash deposits exceeded $10,000. On May 10, 2013, $19,400 in currency was deposited along with the required CTR. Significantly, he stated that there was no attempt made to "split up" the currency when making deposits. There was no attempt made to violate the $10,000 currency rule. For example, on May 22, 2013, $16,380 in currency was deposited along with the required CTR. Also, in this regard, the following day, May 23, 2013, no currency was deposited, indicating that the company did not attempt to divide the deposit. On May 28, 2013, the sum of $13,600 was deposited along with the CTR. Also, on June 4, 2013, $12,400 in cash was deposited and no cash was part of the deposits on June 3 or June 5, 2013. In addition, on June 24, 2013, $15,900 in cash was deposited, and on June 25, 2013, $17,400 in cash was deposited and no cash was in the next two deposits in the following two days. Cirone stated that these deposits demonstrated that there

was no effort made by the company to unlawfully divide the cash.

Again, on July 31, 2013, $19,530 in cash was deposited and no cash in the deposits the day before and the day after. Moreover, no cash was deposited two days before the July 31st deposit, again showing that there was no effort by Roger & Sons to divide the cash and avoid the $10,000 limit. The Movant's cash deposits fluctuate from year to year and have been getting less each year. The deposit slips for 2010, 2011 and 2012 were offered in evidence. (Movant's Exs. J, K and L). In 2011, there were sixty-two cash deposits over $10,000. Cash deposits decreased over the years to the present because "most payments were made by credit cards." (Tr. at 62). Also in evidence, is a letter to Roger & Sons from the Chase Bank stating that the Bank was closing their account. (*See* Movant's Ex. M).

On cross-examination, Cirone testified that Roger & Sons opened a new account at the TD Bank. The bank records reveal that as of April 7, 2014, the Roger & Sons account has a current balance of $647,780.05. (Respondent's Ex. 1). Also, according to the Wells Fargo Bank record in evidence, the average daily ledger balance of Roger & Sons in the month of June, 2013, was $1,094,730.28. (Respondent's Ex. 2). In addition, the average daily balance for the Roger & Sons account was $448,830.50. Cirone testified that he did not receive a letter from the Chase Bank advising them that the account has a pattern of cash deposits under $10,000 "that appeared to be intended to avoid federal reporting requirements." (Tr. at 69, 70).

Cirone told IRS task officers in January 2014 that he was aware of the need to provide identification to banks when he made deposits in cash in amounts of more than $10,000. He was also aware, towards the end of 2013, that there was a reporting requirement for conducting business transactions in amounts of more than $10,000 in cash.

Roger & Sons is a family business. Cirone and his two brothers-in-law Carl Saitta and Anthony Saitta are the principals. They are also the owners of the building in which Roger & Sons is a tenant. The name of the realty company is 286 Bowery Realty.

Roger & Sons took a loan from AMEX for approximately $180,000 in March of 2014. So that Roger & Sons has already borrowed ninety percent of the amount of money that was seized. Despite the seizure, Roger & Sons has been able to continue to operate its business; has continually been able to receive orders for equipment; and after the seizure has received revenue from customers. The moneys received from Roger & Sons have been deposited in the TD Bank account, which now has more than $640,000 on deposit. In Movant's Ex. H, the TD Bank deposit tickets, the following deposits were made by Roger & Sons: $9,400 on March 28, 2013; $9,600 on March 29, 2013; $9,360 on April 2, 2013; $7,460 on April 3, 2013; and $9,800 on April 8, 2013. Also, there was more than $400,000 in the TD Bank account before any loan proceeds were deposited into that account. At this point, after the one witness testified, the Movant, Roger & Sons, Inc., rested.

In the Government's case, one witness, Richard W. Guerci, testified. He is currently employed as a financial investigator for a company called ASRC Primus, that provides contract employees to the IRS Criminal Division in the area of asset forfeiture. He is currently working as a financial investigator in the New York field office of the IRS Criminal Investigation Division. He is involved in the investiga-

tion of the Movant. In this regard, he has reviewed the bank records of the current and former bank accounts of Roger & Sons, Inc., including the JP Morgan Chase Bank, the Wells Fargo Bank, and the TD Bank.

Based on a seizure warrant by Magistrate Judge Wall, the Government seized funds from the Subject Account belonging to Roger & Sons at the Wells Fargo Bank. Magistrate Judge Wall authorized the Government to seize up to the sum of $597,920. Ultimately, the sum of $293,397.11 was seized, which was approximately half of the total amount Magistrate Judge Wall authorized the Government to seize.

The Roger & Sons JP Morgan Chase Bank account was closed by the bank in February 2010. The Wells Fargo Bank records for the period of January 1, 2013 through December 31, 2013, revealed a large amount of activity on a monthly basis, including deposits and withdrawals from the account. The Government introduced in evidence, as Government Ex. 5, a schedule of all the cash deposits in the Roger & Sons account for the period beginning January 30, 2013 through September 26, 2013. The record revealed that from the period of January to September of 2013, Roger & Sons had "approximately 68 structured deposits." The witness defined a structured deposit as "a deposit that was made just below the threshold of $10,000." Also, the company made eight deposits in excess of $10,000 during the period of May 10 and July 31 of 2013. In addition, Guerci testified that the average daily balance for the Subject Account at Wells Fargo Bank for the period of January 2013 through December 2013, namely, the calendar year 2013, was the sum of $603,988.30. The lowest average daily balance during the calendar year 2013 was the sum of $218,000.32; the highest average balance during that year was $1,094,730.28.

As to the Roger & Sons TD Bank account, which was opened January 31, 2014, and is still open, the balance in that account as of April 7, 2014 was $647,780.05.

Guerci testified that the purpose of structuring is to break up an amount of cash which is greater than $10,000 to avoid the penalty of a currency transaction report.

## III. DISCUSSION

### A. The Law

#### 1. As to Whether the Movant is Entitled to Release of the Funds Under 18 U.S.C. § 983(f)

■ "Congress enacted 18 U.S.C. § 983(f) to provide a mechanism for the release of property during the pendency of a civil forfeiture action." *U.S. v. Lebanese Canadian Bank SAL*, No. 11 Civ. 9186(PAE), 2012 WL 1982288, at *1 (S.D.N.Y. June 1, 2012). In this regard, Section 983(f)(1) provides that a claimant is entitled to immediate release of seized property if a claimant can demonstrate: (A) that the claimant has a possessory interest in the property; (B) that the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial; (C) that the continued possession by the Government pending final disposition of the forfeiture proceedings will cause substantial hardship to the claimant; and (D) that the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceedings.

■ Accordingly, with respect to the third and fourth element, at issue here, the burden is on the Movant to prove that it will be subject to substantial hardship if the funds are not returned and that this hardship outweighs the risk that the funds will be dissipated if returned to the Movant during the pendency of the civil forfeiture action. Of importance, "[i]f a claimant fails to establish any one of the five criteria, its motion for the release of property must be denied." *United States v. Sum of $70,990,605,* 991 F.Supp.2d 144, 148, Civil Action No. 12–1905(RWR), 2013 WL 6085612, at *2 (D.D.C. Nov. 5, 2015) (quoting *United States v. Value of Certain E–Metal Accounts at E–Gold Ltd.,* No. ELH–11–01530, 2013 WL 5664678, at *2 (D.Md., Oct. 17, 2013) (in turn, citing *United States v. Undetermined Amount of U.S. Currency,* 376 F.3d 260, 264 (4th Cir. 2004))).

■ The Respondent first argues that § 983(f) does not apply in this case based on the plain language of § 983(f)(8)(A). In this regard, that statute reads as follows: "This subsection shall not apply if the seized property is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized." Courts have read this provision as follows: "Seizure of electronic fund assets of a business that has not itself been seized in a forfeiture action does not trigger the provision permitting a court release of electronic funds; rather the prerequisite under paragraph (8) is the seizure of business itself in the forfeiture action and not seizure of the assets of the business." *Sum of $70,990.605,* 991 F.Supp.2d at 148, 2013 WL 6085612, at *2 (collecting cases); *see also U.S. v. Various Gold, Silver and Coins,* 916 F.Supp.2d 1182, 1187 (D.Oregon 2013) ("Courts have

consistently interpreted 'the assets of a legitimate business which has been seized' as applying only when the Government has seized an entire business, not just its assets.") (collecting cases); *U.S. v. Approximately up to $15,034,6633 in Funds Contained in Ten Bank Accounts,* 844 F.Supp.2d 1216, 1217–18 (D.Utah 2011) ("In examining the meaning of this exception, one court aptly stated that 'a legitimate business' is singular, 'assets' is plural, and 'has been seized' is singular; therefore, 'has been seized' grammatically must refer to a legitimate business, not assets. Other courts that have addressed this statute have similarly determined that a legitimate business must be seized, not merely the assets of a legitimate business.") (citations omitted) (collecting cases).

In this case, the Movant's business has not been seized. In fact, at the initial hearing on April 4, 2014, counsel for the Movant indicated that the Movant has been able to continue to operate despite the seizure of the funds. As such, since the Movant's business has not been seized, but rather only some of its assets, the Movant is not entitled to seek relief pursuant to § 983(f).

In any event, even if § 983(f) did not apply, the Movant may have failed to satisfy its burden based on the papers it submitted in support of its motion. In this regard, the Movant has not offered any evidence indicated that it will suffer a substantial hardship if the funds are not immediately returned. "Although § 983(f) does not define 'hardship', it provides some examples of the hardship Congress deemed sufficient as grounds for release of seized property, i.e. hardship 'preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless.'" *U.S. v. 2005 Mercedes Benz E500,* 847 F.Supp.2d 1211, 1215

(E.D.Cal.2012) (quoting § 983(f)(1)(C)). Here, while the Respondent seized a sizable portion of the Movant's funds, the Movant "[has] not demonstrated, for example, that the government has taken all of the real property of [the Movant], nor [has it] demonstrated even that the government has seized all of the currency owned by [the Movant]." *U.S. v. Contents of Account No. 4000393243*, No. C–1–01–729, 2010 WL 3398142, at *1 (S.D.Ohio Jan. 2, 2010). Indeed, at the initial April 4, 2014 hearing the Movant indicated that it retained other assets despite the seizure of the funds and was continuing to operate. Therefore, apparently, the Movant does not face the kind of hardship necessary to trigger relief under § 983(f). *Id.*

However, with that being said, the Court permitted the Movant to present evidence during the April 9, 2014 hearing in order to meet its burden. A question would still remain as to whether there is a risk that the funds will be dissipated if released to the Movant which outweighs the Movant's hardship. As the Movant has indicated that it wishes to use the funds for expenses, it is possible that there is a real risk that the funds will be gone prior to the completion of the civil forfeiture proceeding. Nevertheless, despite being afforded this opportunity, the Court finds, as detailed below, that the Movant has not met its burden under § 983(f) and is thus not entitled to the relief it seeks.

**B.** *Factual Determinations*

At the hearing, the Respondent United States has established that it properly seized the currency of the Movant Roger & Sons, Inc., in the sum of $294,381.11, located in the Subject Account of the Movant at the Wells Fargo Bank N.A. The record indicated that the Movant had made a series of successive deposits just below $10,000, on several different occa-

sions that constituted structuring. A glaring example was the period between March 28, 2013 and April 3, 2013, where the Movant deposited $9,400 on March 28; $9,600 on March 29; $9,300 on April 3; $7,460 on April 3; and $9,800 on April 8, 2013. Over the course of the years there were other fairly successive deposits of just under $10,000. The Court finds that there was a factual basis for the Government to believe that the Movant was involved in structuring its cash deposits and, on or about February 14, 2014, to seize the sum of $293,397.11 in the Subject Account at Wells Fargo Bank.

**C.** *As to the Statutory Basis for the Seizure*

Pursuant to the provisions of 31 U.S.C. § 5313, the Movant Roger & Sons, Inc., as a "domestic financial institution" involved in a transaction involving the payment, receipt or transfer of United States currency in an amount prescribed by the Secretary of the Treasury, namely the sum of $10,000, "shall file a report on the transaction at the time and in the way the Secretary prescribes." Breaking down cash transactions totaling over $10,000 into smaller sums for the purpose of evading the financial reporting requirement constitutes impermissible "structuring", even if the transactions are conducted over the course of several days. *United States v. Cisneros*, 169 F.3d 763, 771 (C.A.D.C.1999) (two separate cash payments of $8,000 each on December 16 and 18, 1992).

The statute makes it illegal for individuals to structure financial transactions for the purpose of evading reporting requirements regardless of whether the purpose of the structuring is to conceal underlying criminal activity. *United States v. Thakkar*, 721 F.Supp. 1030 (S.D.Ind.1989).

This seizure by the Government was initiated by the alleged structuring activity

of Roger & Sons during the period of January through September 2013. During that period, the Company allegedly made approximately 68 structured cash deposits totaling approximately $600,000. A number of the structured deposits were made on consecutive days and were in amounts somewhat less than $10,000, the threshold amount that would trigger the filing of a CTR.

As previously stated, on January 29, 2014, United States Magistrate Judge William D. Wall found that probable cause existed to believe that up to the sum of $597,920 was involved in structuring activities and therefore, the currency of the Movant was subject to a forfeiture pursuant to the provisions of 31 U.S.C. § 5313(C) which provides:

> (2) Civil forfeiture—any property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code.

As the Government asserts, the cases are replete where hardship petitions have been denied on the basis that the Government did not seize the business. *See, e.g.,* *United States v. Various Gold, Silver & Coins,* 916 F.Supp.2d 1182, 1186–87 (D.Ore.2013) (stating that subsection (8) prohibits the release of currency unless "the Government has seized an entire business, not just its assets"); *United States v. Sum of $70,990,605,* 991 F.Supp.2d 144, 148, 12–CV–1905, 2013 WL 6085612, at *2 (D.D.C. November 5, 2013) ("the prerequisite under paragraph (8) is the seizure of the business itself in the forfeiture action and not seizure of the assets of the business"); *United States v. All Funds on Deposit,* 12–CV–213, 2012 WL 1948874, at *1 (S.D.Miss. May 22, 2012) ("Here, the government argues, correctly so, that return of the currency is prohibited because [the claimant] has not shown that a legitimate business, as opposed to its assets, has been seized."). *United States v. Approximately Up to $15,034,663,* 844 F.Supp.2d 1216, 1217–18 (D.Utah 2011) ("a legitimate business must be seized, not merely the assets of a legitimate business"); *United States v. 8 Gilcrease Lane,* 587 F.Supp.2d 133, at 140–41 (D.D.C.2008) ("The noun that 'which has been seized' modifies is 'business' and not 'assets'. Seizure of currency is not the same as seizure of a business."); *In re Seizure Warrants Issued March 27, 2008, and April 23, 2008,* 593 F.Supp.2d 892, 893 (N.D.W.Va.2008) ("currency may not be released to the claimant pending trial under the 'hardship' provision, unless the legitimate business itself has been seized").

It is not disputed that the Government never seized the business of Roger & Sons. Therefore, Section 983(f) is governing the release of seized property is not applicable and the motion by the Movant to obtain the release of the seized currency is denied.

The Court further finds that, even without considering the obvious defect set forth in Section 983(f)(8), the Movant failed to establish a basis for release of the seized property under the provisions of 18 U.S.C. § 983(f).

### D. As to the "Substantial Hardship" Element

The statute at issue which must be complied with in order to obtain a release of the seized property, requires that "the continued possession by the Government ... will raise a substantial hardship to the claimant such as preventing the function-

ing of a business. . . ." The proof at the hearing revealed that, in June, 2013 the average daily ledger balance in the Wells Fargo Subject Account was $1,094,730.28. Also as of April 7, 2014, the Movant's account at the TD Bank had a balance of $647,780.05 on deposit. Despite the seizure, the Movant has been able to continue to operate its business and there has been no proof that the Movant has been prevented from functioning or otherwise suffered "substantial hardship".

**E.  *As to the Risk that the Currency at Issue Will Be Lost Or Canceled***

The Movant acknowledges in its memorandum of law and supporting affidavit that if it is released it intends its use the currency at issue to pay expenses. Where the Movant admits that it will dissipate the currency, there is a failure to comply with the provisions of § 983(f)(1)(D). As stated in *United States v. Various Gold, Silver & Coins,* 916 F.Supp.2d 1182, 1186 (D.Oregon 2013) where "dissipation is nearly certain, the balance under § 983(f)(1)(D) tips sharply against the claimant." It would be improvident and against the precedents to order the immediate release of $293,397.11 in currency that will be dissipated with no guarantee of an equivalent replacement. *See United States v. 8 Gilcrease Lane,* 587 F.Supp.2d 133, 147 (D.D.C.2008).

Accordingly, for the reasons set forth above, Roger & Sons have failed to satisfy all of the required factors set forth in Section 983(f) and its motion to obtain the immediate release of its currency seized by the Government in the sum of $293,397.11, is denied.

**F.  *The Due Process and Eighth Amendment Claims Raised by the Movant are Without Merit***

As an additional reason for the release of the currency, the Movant claims that "the manner in which the Government undertook the seizure has deprived Roger & Sons of its property without due process." The Movant contends that it was not afforded a pre-seizure or post-seizure hearing. In addition, the Movant contends that the forfeiture of the currency would be an "excessive fine" in violation of the Eighth Amendment.

**1.  *The Issue of Probable Cause has already been determined***

The currency at issue was seized pursuant to a warrant issued by Magistrate Judge Wall. When the warrant was issued Judge Wall made a determination that the affidavit submitted in support of the warrant application established probable cause to believe that the currency was subject to seizure and forfeiture. This finding by a Magistrate Judge of probable cause "should be accorded great difference in challenges to pretrial warrants to seize assets." *United States v. Dupree,* 781 F.Supp.2d 115, 134 (E.D.N.Y.2011). This principle of law has also been enumerated in *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Moore,* 968 F.2d 216, 222 (2d Cir.1992); and *United States v. Jakobetz,* 955 F.2d 786, 803 (2d Cir.1992). As a result, the Government has established that probable cause exists to believe that Roger & Sons had been involved in structuring.

**2.  *As to the Claim of Due Process Deprivation***

■  The Movant asserts that it was deprived of due process by the seizure of its currency in that it was deprived of either a pre-seizure hearing or a prompt post-seizure hearing. According to the Movant the delay by the Government in the filing of a complaint, without giving the claimant any opportunity to be heard, violated the

Movant's right to due process. The Movant cites to *United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896 (2d Cir.1992), to support its due process assertion. In *Statewide Auto*, the Government seized the claimant's "ownership, possession, and operation of an ongoing business" and "shut Statewide down completely instead of pursuing some less intrusive means." (971 F.2d at 902). The difference in the seizure in this case, namely of the currency in a bank account of the business, was expressly discussed in *United States v. Victoria–21, et al.*, 3 F.3d 571 (2d Cir.1993). In *Victoria–21*, the Second Circuit clearly reviewed the difference between a seizure of an entire business which has been "shut down" and the mere diminishment of business activity or capacity as follows:

> In *Statewide*, we held that:
>
> Where a pre-trial seizure pursuant to an *ex parte* warrant effectively shuts down an ongoing business, an order denying vacatur of the seizure is appealable, because it has all the earmarks of an injunction, and the damage of error unreviewed before the judgment is definitive and complete has been deemed greater than the disruption cause by intermediate appeal.
>
> *Id.* at 901 (citations and quotations omitted). However, as the language and tenor of the *Statewide* opinion make clear, it is only when a business has been "shut down" that the exception applies.

> \* \* \* \* \* \*

The facts of *Statewide* are clearly distinguishable—in that case, the Government physically seized the premises and all assets, cut off utility services and hung out a sign stating that business was closed. *Id.* at 899. There was no business left to save. No such drastic turn of events has been alleged here.

(3 F.3d at 574–75).

Here, one of the Movant's bank accounts was seized, not its entire business and no immediate post-seizure hearing had to be held. Accordingly, Roger & Sons was not denied due process; was not entitled to an immediate hearing; and has been given a full and fair opportunity to be heard in this civil forfeiture action.

### 3. *As to the Claim of Violation of the Eighth Amendment*

The Movant asserts that "the forfeiture is subject to review under the excessive fines clause of the Eighth Amendment to the United States Constitution." (Movant's Memorandum at 7). In this case, the Movant contends that the seizure constituted an excessive fine which renders the forfeiture of the entire allegedly structured amount to be excessive.

Initially, the Court notes that the currency seized has not yet been forfeited. The determination as to forfeiture will be decided in the pending civil forfeiture action. Also, the Court finds that, at this stage of the proceeding, there is no obligation on the part of the Court to determine if the forfeiture is constitutionally excessive. In any event, the Court finds that this Eighth Amendment contention is not a valid basis for the present release of the Movant's currency.

### IV. CONCLUSION

For the reasons stated above, it is hereby

ORDERED, that, based on the reasons set forth above, the motion by the Movant, Roger & Sons, Inc., seeking the immediate

release of the seized funds in the Wells Fargo Bank, is denied in its entirety.

**SO ORDERED.**